AFFILIATION OF ARIZONA INDIAN CENTERS, INC., Petitioner,

v.

The UNITED STATES DEPARTMENT OF LABOR, Respondent.

No. 82-7506.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1983.

Decided June 30, 1983.

Mary Jo O'Neill, Phoenix, Ariz., for petitioner.

Lafayette S. Rose, Dept. of Labor, Washington, D.C., for respondent.

Before TRASK, SKOPIL and FERGUSON, Circuit Judges.

SKOPIL, Circuit Judge:

The Affiliation of Arizona Centers, Inc. ("AAIC") petitions for review of a Department of Labor (DOL) determination that it misused $14,551.00 in CETA grant funds, and the order that the amount be repaid from non-CETA funds.

## FACTS AND PROCEEDINGS BELOW

On October 1, 1976 the DOL awarded a grant to AAIC to develop and administer an employment and training ("CETA") program for Indians. The grant, in the amount of $103,378, was to run through September 30, 1977. This was later supplemented by an award of $137,522, and the grant period was extended through September 30, 1978.

AAIC also administered an ACTION program. Like CETA, ACTION programs are designed to help the poor and disadvantaged. It was funded by an ACTION grant of $16,266.00. The ACTION and CETA programs operated out of different offices in the same building.

An audit of the CETA program expenditures was made for the period October 1, 1976 to September 30, 1977. DOL disallowed costs totaling $61,531. AAIC requested a hearing before an Administrative Law Judge ("ALJ") to challenge the disallowance.

The ALJ found three separate disallowances totaling $14,551. The first disallowance of $8,879 was for expenditures charged to "administration" from the 1977 grant even though expenditures were for the 1976 grant. The second was for $3,172 for expenditures charged to "services" from the 1977 grant but expended for the 1976 grant. These two disallowances, totaling $12,051, were basically for monies from 1977 fiscal year that were spent to administer left over "service" funds from the prior fiscal year. The third disallowance of $2,500 was for failure to have a cost allocation plan for the administration of the CETA and ACTION programs. The ALJ ordered AAIC to repay the $14,551 out of non-CETA funds.

The Secretary of Labor adopted the findings and conclusions of the ALJ. AAIC appeals.

## ISSUES

1. Is there good cause to set aside the determination of disallowance for costs carried back to the previous grant year?

2. Were the ALJ's findings of shared costs between the CETA and ACTION programs, and the amount chargeable to ACTION, supported by substantial evidence?

## STANDARD OF REVIEW

The findings of fact by the Secretary, if supported by substantial evidence, shall be conclusive, but the court, for good cause shown, may, in whole or in part, set

aside the findings of the Secretary or remand the case . . . to take further evidence, and the Secretary may thereupon make new or modified findings of fact and may modify the previous action, and shall certify to the court the record of the further proceedings.

29 U.S.C. § 817 (repealed 1982).

## DISCUSSION

1. Disallowance for Carried Back Costs.

■ The basis for the disallowance of $12,051 that was spent from the 1977 grant to administer left over funds from 1976 was 29 C.F.R. 98.12(b)(4):

[F]unds provided under one title of the Act may not be used to support costs of another title, or another grant under the same title.

There is no suggestion that the money was improperly spent. No allegation of fraud or misconduct of any kind on the part of AAIC was made. Further, the government concedes that the use of the funds would have been entirely proper if AAIC had received written permission.[1]

The record reveals that AAIC sought and received permission from the DOL officer with whom they regularly consulted. AAIC received oral permission to proceed as requested. The DOL concedes that oral permission was given, but argues the regulations require modifications to be in writing. It argues the project officer was without authority to grant oral permission. The government does not contend that seeking a

written modification would have led to a different result.

We need not decide whether the regulations required AAIC to obtain written permission. A grant officer may allow costs associated with public service employment programs if not associated with a finding of fraud, if there is immediate remedial action by the recipient, and the costs involved are insubstantial. 20 C.F.R. § 676.88(c).[2] The applicability of section 676.88(c) to this case has never been determined. At the hearing, the ALJ inquired of the applicability of waiver under this regulation. Counsel for DOL stated that he believed AAIC did not have a public service employment program. The ALJ apparently relied on this assertion in ignoring the potential applicability of 20 C.F.R. § 676.88(c).

AAIC's proposed findings before the ALJ, however, indicate that AAIC's CETA program is a public service employment program. Without findings and any evidentiary basis for DOL counsel's opinion, the potential applicability of 20 C.F.R. § 676.88(c) cannot be ignored. We therefore remand to the Secretary to take further evidence on the question of whether AAIC runs a public service employment program and to determine the applicability of 20 C.F.R. § 676.88(c).

2. Shared Costs.

■ The ALJ found that AAIC shared costs between its CETA and ACTION programs without filing a required "allocation plan." 29 C.F.R. § 97.161(a)(2).[3] The ALJ therefore disallowed $2,500.

(1) The activity was not fraudulent and the violation did not take place with the knowledge of the recipient or subrecipient; and

\* \* \* \* \* \*

(4) Immediate action was taken to remedy the problem causing the questioned activity or ineligibility; and

(5) The magnitude of questioned costs or activities is not substantial.
(Emphasis added.)

---

1. The government finds the requirement for grant modifications to be authorized in writing in 29 C.F.R. § 97.121, which provides that "[a] Grant Signature Sheet shall be used as the instrument to modify a grant agreement when a change is proposed in the terms and the conditions of the grant."

2. Section 676.88(c) provides:

In any case in which the Grant Officer determines that there is sufficient evidence that funds have been misspent, the Grant Officer shall disallow the costs, except that costs associated with ineligible participants and *public service employment programs may be allowed* when the Grant Officer finds:

3. Indirect costs are those incurred jointly for activities under this subpart and other activities on behalf of the recipient, and those not readily assignable to specific activities under this subpart. Indirect costs must be supported by a cost allocation plan and/or an

The record is lacking in any substantial evidence to support the finding of the ALJ that costs were shared. " 'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Corona Livestock v. U.S. Department of Agriculture*, 607 F.2d 811, 814 (9th Cir.1979), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). The finding of shared costs is based on the assumption that office space and a telephone were shared by CETA and ACTION. This conclusion is inconsistent with the evidence.

The current and past executive directors of AAIC testified that the ACTION and CETA programs were not situated in shared office space. The ACTION program occupied donated, rent-free quarters in Room 914 of the U-Haul Building. CETA was administered in Room 908. Although the ACTION program was operated under the auspices of AAIC, all of its direct and indirect costs were paid from ACTION funds, which were kept separate from CETA funds.[4]

The only evidence in the record which is even suggestive of shared costs is telephone billing for both CETA and ACTION in CETA's name. Each call, however, is listed separately on the bill and, as the cancelled checks introduced at the hearing indicate, CETA funds used to pay the telephone bill were always reimbursed by ACTION for any calls attributable to that program. This evidence is insufficient to support a finding that the two programs shared any indirect costs.

On remand the Secretary is instructed to take evidence and make findings which ascertain the actual amount of shared costs, if any.

### CONCLUSION

The case is remanded to the Secretary of Labor to determine the applicability of 20

indirect cost proposal, which shall include an indirect cost pool.
29 C.F.R. § 97.161(a)(2).

**4.** This was established by cancelled checks and other documents introduced at the hearing.

C.F.R. § 676.88(c), and to determine the actual amount of shared costs, if any.[5]

REMANDED.

**5.** We do not reach the question of whether the Secretary of Labor is authorized to demand repayment of disallowed costs out of non-CETA funds.